UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER CLOUSTON and MARSHALL MCGUIGAN, | : |
| | : |
| | : |
| Plaintiffs, | : |
| | : No. 3:01CV2404(DJS) |
| v. | : |
| | : |
| ON TARGET LOCATING SERVICES, ENERGY EAST CORP., and THE UNION WATER & POWER COMPANY, | : |
| | : |
| | : |
| | : |
| Defendants. | : |

## MEMORANDUM OF DECISION

Plaintiffs Christopher Clouston and Marshall McGuigan bring this action against their employer, defendant On Target Locating Services ("On Target"), which is a division of defendant the Union Water & Power Company ("Union Water"), which is a subsidiary of Energy East Corp. (hereinafter collectively "On Target" or "defendants") alleging the following claims: breach of contract (Count One); negligent misrepresentation (Count Two); breach of the implied covenant of good faith and fair dealing (Count Three); promissory estoppel (Count Four); violation of the Employee Retirement Income Security Act ("ERISA") (Count Five); as to plaintiff McGuigan only, violation of Section 31-290a of the Connecticut General Statutes (Count Six); and violation of Section 31-51q of the Connecticut General Statutes (Count Seven). On March 26, 2003, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, defendants filed a motion for summary judgment

on the claims brought by both Clouston (dkt. # 62) and McGuigan (dkt. # 66).    For the reasons set forth herein, defendants' motions are **GRANTED in part** and **DENIED in part**.

## I. FACTS

McGuigan joined On Target as a locator in February of 2000; Clouston joined On Target as a locator in May of 2000.  A locator identifies and marks the location of underground utilities.  Both men worked in Connecticut.  McGuigan and Clouston were promoted to supervisors in April of 2000 and October of 2000, respectively.  As supervisors, plaintiffs were required to oversee the work of locators as well as perform locator work throughout their areas of responsibility.  At the time they were promoted, both McGuigan and Clouston were residents of Rhode Island.  When he was promoted, Clouston agreed to move his residence from Rhode Island to Connecticut.

Upon their promotions, Clouston and McGuigan eventually reported to Tim Moore, who became the regional manager in July of 2000, and to Jeffrey Melcher, who was the general manager of On Target.  Rena Cater was a Human Resource Coordinator with whom plaintiffs had contact about employment issues.  Normand Rodrigue was the senior vice president of Union Water and had supervisory responsibility for On Target employees working in Connecticut.

At some point after their promotions to supervisor, on or about January 28 or 29, 2001, McGuigan and Clouston raised

concerns about Moore's behavior with Cater following a training session regarding On Target's code of conduct.  They indicated their misgivings about Moore's use of profanity and Moore's directions to pay employees for time the employees did not actually work.  McGuigan felt that Moore had been using abusive language toward him since the late summer or early fall of 2000. Prior to meeting with Cater, McGuigan had expressed concern to Cater that some employees were being paid for time that they did not actually work as a de facto incentive to work actual overtime or other undesirable shifts.  Cater referred this issue to Melcher, who spoke to Moore, instructed him that this action violated company policy, and then considered the matter closed.

On Target claims that it investigated claims of harassment against Clouston, McGuigan, and Moore in January and February of 2001.  McGuigan received a written warning from Cater dated February 20, 2001.  The written warning provides the following:

> During the course of a harassment investigation, allegations of intimidation and harassment have been made against you.  We interviewed you and other people to investigate the allegations.  As a result of the investigation, we substantiated that you have conducted yourself in an intimidating and harassing manner.

(Dkt. # 65, Ex. E, Ex. 1).  Clouston did not receive a reprimand for abusive behavior, but Cater issued a formal reprimand to Clouston for discussing the investigation with McGuigan in contravention of Cater's instructions.

After this investigation, both Clouston and McGuigan were

-3-

demoted.  On March 1, 2001, On Target demoted Clouston to the position of locator.  Melcher told Clouston that he was being demoted because of performance issues.  Melcher also states in his affidavit that he demoted Clouston because Clouston did not move his residence from Rhode Island to Connecticut within a certain time period.  Clouston says that Cater and Melcher both told him not to move first in December of 2000 and then again in February of 2001.  In April of 2001, On Target demoted McGuigan to the position of locate technician.  On Target claims that it demoted McGuigan "[a]s a result of his poor supervisory skills, failure to improve on operational issues, and failure to follow Company directives. . . ."  (Dkt. # 65, Ex. E, ¶ 10).

McGuigan claims that his demotion was in retaliation for complaining about the amount of work Moore assigned to him following McGuigan's return from a workers' compensation leave. On September 12, 2000, McGuigan reported to On Target that he had hurt himself on the job on September 8, 2000.  While he was lifting a manhole cover, McGuigan had pain in his upper back. On September 21, 2000, On Target filed a workers' compensation claim on McGuigan's behalf with Travelers Insurance.  McGuigan worked with restrictions prior to undergoing surgery on his back on December 18, 2000.  McGuigan's physician authorized him to return to light duty work on February 12, 2001.

McGuigan did return to work, and apparently worked overtime.

-4-

McGuigan's overtime is the subject of much dispute; McGuigan
claims that Moore required him to get certain work done
irrespective of McGuigan's light duty restriction and that his
supervisors suspected him of working slowly so that he would need
to work overtime to complete his tasks.  McGuigan says that he
unwillingly exceeded his restrictions because he was afraid that
Moore would fire him if he did not do so.  McGuigan told an
insurance adjuster, Debbie Buetell, that he was not able to seek
physical therapy because he was working more than he should.
Buetell then spoke to Dan LaBrie, a risk manager for Union Water,
about McGuigan's concerns.  LaBrie then reported this information
to Melcher or Moore.  On Target claims that his supervisors
instructed him not to work overtime so that McGuigan could adhere
to his light duty restrictions.  Apparently, this dispute was
part of On Target's motivation for demoting McGuigan; McGuigan
claims that Melcher mentioned McGuigan's complaints to Buetell
about his inability to receive physical therapy when Melcher
demoted him.

      McGuigan, Clouston, and On Target also clashed over the type
of health insurance benefits available to On Target employees
who, like Clouston and McGuigan, lived in Rhode Island.  In 2000,
Rhode Island residents working as locators in Connecticut were
not eligible to participate in the HMO plan available to
Connecticut residents, but instead were eligible to participate

in the Indemnity Plan, which had a $500 deductible.  On Target
claims that the reason for the discrepancy was that there were
not enough Rhode Island residents to obtain cost-effective
coverage, but plaintiffs claim that the discrepancy was the
result of a mistake in procuring coverage that On Target was
unwilling to correct.  Irrespective of the reason therefor,
McGuigan voiced his displeasure[1] regarding the discrepancy to
Cater and stated that he believed that the discrepancy was unfair
to him.  On or about March 12, 2001, McGuigan wrote a letter to
the U.S. Department of Labor expressing his displeasure regarding
the discrepancy.  In January of 2002, On Target offered a
different health insurance plan; both plaintiffs enrolled in this
plan.

## II.  DISCUSSION

Clouston and McGuigan assert the following claims: breach of
contract (Count One); negligent misrepresentation (Count Two);
breach of the implied covenant of good faith and fair dealing
(Count Three); promissory estoppel (Count Four); violation of the
Employee Retirement Income Security Act ("ERISA") (Count Five);
as to plaintiff McGuigan only, violation of Section 31-290a of
the Connecticut General Statutes (Count Six); and violation of

---

[1] McGuigan complained to Cater about the poor quality of
health insurance even before he began working.  McGuigan says
that Cater told him that better options would be provided within
six months.

-6-

Section 31-51q of the Connecticut General Statutes (Count Seven).
On Target seeks judgment as a matter of law on each of these
claims with respect to both Clouston and McGuigan.

A.  STANDARD

A motion for summary judgment may be granted "if the
pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show
that there is no genuine issue of material fact and that the
moving party is entitled to judgment as a matter of law."  Fed.
R. Civ. P. 56(c).  Summary judgment is appropriate if, after
discovery, the nonmoving party "has failed to make a sufficient
showing on an essential element of [its] case with respect to
which [it] has the burden of proof."  Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986).  "The burden is on the moving party 'to
demonstrate the absence of any material factual issue genuinely
in dispute.'"  American Int'l Group, Inc. v. London Am. Int'l
Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v.
Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir.
1975)).  A dispute concerning a material fact is genuine "'if
evidence is such that a reasonable jury could return a verdict
for the nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist.,
963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 248 (1986)).  The court must view all
inferences and ambiguities in a light most favorable to the

-7-

nonmoving party.  See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Id.

### B.  BREACH OF CONTRACT

Clouston and McGuigan claim that an implied in fact contract arose between them and On Target and that On Target breached the terms thereof by not following a progressive discipline policy set forth in materials distributed to its employees.  "A contract implied in fact, like an express contract, depends on actual agreement."  Coelho v. Posi-Seal Intern., Inc., 208 Conn. 106, 111 (1988) (internal quotation marks omitted).  This agreement may be manifested by "by words or action or conduct. . . ."  Id. at 112.  "Although both express contracts and contracts implied in fact depend on actual agreement; . . . '[i]t is not fatal to a finding of an implied contract that there were no express manifestations of mutual assent if the parties, by their conduct, recognized the existence of contractual obligations.'"  Janusauskas v. Fichman, 264 Conn. 796, 805 (2003) (quoting Rahmati v. Mehri, 188 Conn. 583, 587 (1982)).

Three documents pertaining to plaintiffs' claim are particularly relevant.  First, both McGuigan and Clouston signed a document entitled "Applicant's Statement" at the time they were hired.  This document provides, in pertinent part, the following:

> I hereby understand and acknowledge that, unless otherwise defined by applicable law, any employment

> relationship with this organization is of an "at will"
> nature, which means that the Employee may resign at any
> time and the Employer may discharge Employee at any
> time with or without cause.  It is further understood
> that this "at will" employment relationship may not be
> changed by any written document or conduct unless such
> change is specifically acknowledged in writing by an
> authorized representative of this organization.

(Dkt. # 65, Ex. A, Exs. 1 & 2).  Second, the Union Water Power

Company Employee Handbook[2] contains the following passage:

> This Employee Handbook has been provided to you to
> provide guidance and help answer questions you may have
> in regards to some of our practices.  This handbook
> does not imply a contractual agreement nor does [sic.]
> any of the policies or procedures contained within.
> Your employment with this company is at will and that
> relationship can be dissloved at such time either you
> or the Company feels that it is necessary.

(Dkt. # 86, Ex. 3).  Third, shortly after On Target's parent

corporation was purchased by Energy Easy Corporation, On Target

distributed a "Code of Conduct" to its employees, which is dated

February of 2001.

Plaintiffs claim that the foregoing documents, as well as

other representations, could permit the trier of fact to conclude

that a contract implied in fact arose between them and On Target.

---

[2] McGuigan claims that the Union Water Power Company
Employee Handbook upon which On Target relies did not contain the
language quoted in the text of this memorandum at the time he was
hired.  McGuigan's evidence in this regard, however, is not
authenticated, as Judge Smith noted in his ruling on defendants'
motion to strike, (see dkt. # 93 at 5), and therefore cannot be
considered.  As such, On Target has offered uncontradicted
evidence that the portion of the Union Water Power Company
Employee Handbook quoted in the text was part of the operative
version when plaintiffs were hired.

Plaintiffs also rely upon Cater's statement to McGuigan that "[w]e adhere to a policy of progressive discipline," (dkt. # 65, Ex. E, Ex. 1), and Cater's testimony that Union Water's anti-harassment policy prohibited retaliation for reporting incidents of harassment.  Plaintiffs further assert that On Target never referred to any of the policies referenced herein as optional, and that On Target repeatedly emphasized that these policies must be followed.

In view of the record as a whole, there is no issue of material fact on this claim because no reasonable trier of fact could conclude that a contract implied in fact had arisen.  Both Clouston and McGuigan signed acknowledgments specifically stating that they could be terminated, and correspondingly disciplined or demoted, without cause.  Further, the Union Water Power Company Employee Handbook contains language effectively disclaiming an intention to contract according to the matters stated therein, which is grounds to find that, as a matter of law, no contract could be implied.  See Davis v. Liberty Mut. Ins. Co., 218 F. Supp. 2d 256, 260 (D. Conn. 2002) ("There is a substantial body of Connecticut state and federal court decisions granting summary judgment in cases where the personnel manual at issue in a breach of contract claim contains an express disclaimer.").  The Code of Conduct, even if it is not covered by the disclaimer in the Union Water Power Company Employee Handbook, does not contain the kind

of definitive language necessary to infer an intent to form an agreement with respect to protection from harassment and progressive discipline.  See  Lowe v. AmeriGas, Inc., 52 F. Supp.2d 349, 357 (D. Conn. 1999) ("In order to support contractual liability, the defendant's representations must be sufficiently definite to manifest a present intention to undertake an immediate contractual obligation to the plaintiff.").  Plaintiffs also have not demonstrated that On Target's professed use of progressive discipline, as stated by several On Target officials and Cater's written reference thereto in her memorandum to McGuigan, was the product of a contractual commitment to plaintiffs.  The existence of these policies is not challenged; what the evidence does not demonstrate, however, is On Target's intention to enter into an enforceable contractual commitment to adhere to these policies.  See Reynolds v. Chrysler First Commercial Corp., 40 Conn. App. 725, 732 (1996) ("The plaintiff, however fails to recognize that it is his burden to establish that adherence to these policies and procedures was the result of a contractual commitment by the defendant.").  When the evidence is examined as a whole, there can be no dispute that On Target did not intend to form an implied in fact contract with plaintiffs, and judgment must enter for defendants on Count One of the Amended Complaint.

C. NEGLIGENT MISREPRESENTATION

In the Amended Complaint, plaintiffs allege that "Defendants made representations to Plaintiffs concerning [their] policies concerning harassment, retaliation and other terms and conditions of employment that were false and made negligently and/or without regard to their accuracy." (Am. Compl., Count Two, ¶ 44). With respect to the tort of negligent misrepresentation, the Connecticut Supreme Court has endorsed the principles set forth in Section 552 of the Restatement (Second) of Torts, which provides the following:

> [o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Rest. (Second) Torts § 552(1) (1977). "The basic element of a claim for misrepresentation, however, is whether there was a misstatement." Citino v. Redevelopment Agency of City of Hartford, 51 Conn. App. 262, 275 (1998); see D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 218 (1987) ("[T]he plaintiff need not prove that the representations made by the defendants were promissory. It is sufficient to allege that the representations contained false information.").

Plaintiffs' claims fail as a matter of law because, in light

-12-

of the acknowledgment and disclaimer, reliance on any statement
contrary thereto was not justified.  The acknowledgment and
disclaimer expressly states that On Target retains the discretion
to discipline, demote, or terminate plaintiffs' employment at
will.  The representations upon which plaintiffs claim to rely
contradict these express statements because each statement
implies that On Target's discretion was in some way limited by,
for example, a policy of investigating complaints of harassment
in some manner, a policy prohibiting retaliation for claiming
harassment, and a statement to Clouston not to move to
Connecticut pending an investigation.  Justifiable reliance upon
these alleged misrepresentations therefore cannot be justified,
and judgment shall enter for defendants on this claim.

 D. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

     Plaintiffs claim that On Target breached the covenant of
good faith and fair dealing implied in every Connecticut
contract, see Habetz v. Condon, 224 Conn. 231, 238 (1992), by
"refusing to provide Plaintiffs with adequate protection from
harassment, intimidation and retaliation, and by knowingly and
willfully allowing breaches of the parties' contract of
employment, all with reckless disregard for Plaintiffs' legal and
contractual rights."   (Am. Compl., Count Three, ¶ 47).  The
covenant of good faith and fair dealing requires that neither
party to a contract do anything that will injure the right of the

other to receive the benefits of the agreement.  See Habetz, 224

Conn. at 238.  To recover under the covenant of good faith and

fair dealing, a plaintiff must show that: (1) plaintiff and

defendant were "parties to a contract under which the plaintiff

reasonably expected to receive certain benefits;" (2) defendant

"engaged in conduct that injured the plaintiff's right to receive

some or all of those benefits;" and (3) defendant acted in bad

faith in committing the acts that injured the plaintiff's right

to receive the benefits it expected from the contract.

ShareAmerica, Inc. v. Ernst & Young, No. X02CV930150132S, 1999 WL

545417, at *6 (Conn. Super. Ct. Jul. 2, 1999).  Bad faith "in

general implies both actual or constructive fraud, or a design to

mislead or deceive another, or a neglect or refusal to fulfill

some duty or some contractual obligation, not prompted by an

honest mistake as to one's rights or duties, but by some

interested or sinister motive."  Habetz, 224 Conn. at 236-237;

see Buckman v. People Express, Inc., 205 Conn. 166, 171 (1987).

   Because plaintiffs base this claim[3] upon breaches of implied

terms of their employment contracts, their claims must fail as a

---

   [3] To the extent plaintiffs' claims could be construed to
allege a cause of action under Magnan v. Anaconda Industries,
Inc., 193 Conn. 558 (1984), which held that a cause of action for
the breach of the covenant of good faith and fair dealing exists
when an employer discharges an employee "where the discharge
contravenes a clear mandate of public policy," Sheets v. Teddy's
Frosted Foods, Inc., 179 Conn. 471, 474 (1980), plaintiffs have
not alleged the existence of, nor presented support therefor, a
public policy that On Target has disregarded.

matter of law. The court has found that, as a matter of law, plaintiffs cannot prove that there was an implied in fact contract stating those terms. Therefore, judgment shall enter for defendants on this claim.

## E. PROMISSORY ESTOPPEL

Plaintiffs claim that "Defendants' words, actions and conduct amounted to clear and definite promises that Plaintiffs would be provided a workplace free of harassment, abuse, threats and retaliation and that Plaintiffs would only be disciplined or demoted for just cause, after proper notice and a reasonable opportunity to correct any perceived deficiencies." (Am. Compl., Count Four, ¶ 49). With respect to promissory estoppel, the Connecticut Supreme Court has endorsed the approach set forth in Section 90 of the Restatement (Second) of Contracts, which provides the following:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Rest. (Second) Contracts § 90 (1981). "A fundamental element of promissory estoppel, therefore, is the existence of a clear and definite promise which a promisor could reasonably have expected to induce reliance." D'Ulisse-Cupo, 202 Conn. at 214.

For the reasons set forth in the preceding section of this memorandum, plaintiffs' cannot, as a matter of law, prevail on

their promissory estoppel claim.  The acknowledgment and disclaimer, and the lack of clear and definite representations that could be considered promissory, precludes recovery in this case.  Therefore, judgment shall enter for defendants on this claim.

## F. VIOLATION OF ERISA

Plaintiffs claim that On Target violated three provisions of ERISA.  First, they allege that On Target denied plaintiffs benefits and request relief pursuant to 29 U.S.C. § 1132(a)(1)(B).  Plaintiffs, however, do not seek benefits allegedly due pursuant to the terms of a benefit plan; instead, plaintiffs claim that On Target should have provided benefits that it provided to other employees and that it allegedly promised to offer to plaintiffs at some point in the future. Because there is effectively no plan under which plaintiffs can claim benefits, plaintiffs cannot prevail on their claim inasmuch as it is brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

Second, plaintiffs claim that On Target breached a fiduciary duty owed to them and seek relief pursuant to 29 U.S.C. § 1132(a)(3).  Plaintiffs contend that Cater "promised that better coverage would be provided to all employees working in Connecticut 'within six months.'" (Am. Compl., Count Five, ¶ 57; see Pls. Ex. 6 (McGuigan Dep.) at 68:19-25 ("And you know, I questioned [Cater], I explained to her that that insurance was

-16-

undesirable insurance.  And [sic] she assured me on more than one
occasion but during that phone call that it will change within
six months, and the reason we have that undesirable insurance is
because we had to go into Connecticut and work so quickly.")).
"[A] plan administrator may not make affirmative material
misrepresentations about proposed future changes to an employee
benefit plan. . . .  Such misrepresentations are actionable as a
breach of fiduciary duty under ERISA."  Ballone v. Eastman Kodak
Co., 109 F.3d 117, 122 (2d Cir. 1997) (citations omitted).  "To
establish a claim for breach of fiduciary duty based on alleged
misrepresentations concerning coverage under an employee benefit
plan, plaintiff must show: (1) that the defendant was acting in a
fiduciary capacity when it made the challenged representations;
(2) that these constituted material misrepresentations; and (3)
that plaintiff relied on those misrepresentation to his
detriment."  Danis v. Cultor Food Science, Inc., 154 F. Supp. 2d
247, 259 (D. Conn. 2001).

     Plaintiffs have raised a genuine issue of material fact with
respect to their misrepresentation claim.  Defendants have not
met their burden of proving that there is no material issue of
fact for trial because McGuigan's account of Cater's statements
differs from Cater's account, and the evidence On Target offers
regarding the accuracy of Cater's statements does not remove all
doubt that the statements were accurate.  Also, there is

-17-

sufficient evidence for the trier of fact to conclude that
Cater's statements were material and that plaintiffs reasonably
relied upon these statements.  Defendants' motion for summary
judgment is therefore denied on this claim.

Third, plaintiffs claim that On Target retaliated against
them in violation of 29 U.S.C. § 1140.  "An essential element of
plaintiff's proof under the statute is to show that an employer
was at least in part motivated by the specific intent to engage
in activity prohibited by [29 U.S.C. § 1140]." Dister v.
Continental Group, Inc., 859 F.2d 1108, 1111 (2d Cir. 1988).  A
plaintiff may meet his burden through the framework established
by the Supreme Court in McDonnell Douglas Corp. v. Green, 411
U.S. 792, 802 (1973).  Under that framework, a plaintiff alleging
unlawful discrimination establishes a prima facie case by showing
he: (1) was a member of a protected class; (2) was qualified for
the position he held; (3) suffered an adverse employment action;
(4) in circumstances giving rise to an inference of
discrimination.  See Schnabel v. Abrahmson, 232 F.3d 83, 87 (2d
Cir. 2000); see also Texas Dept. Of Community Affairs v. Burdine,
450 U.S. 248, 253 (1985) ("Plaintiff must prove by a
preponderance of the evidence that she applied for an available
position for which she was qualified, but was rejected under
circumstances which give rise to an inference of unlawful
discrimination.").  If the plaintiff establishes a prima facie

-18-

case, the employer has the burden of articulating a "legitimate, nondiscriminatory reason" for the adverse employment action. Stern v. Trustees of Columbia University, 131 F.3d 305, 312 (2d Cir. 1997). If the employer does so, the plaintiff must prove by a preponderance of the evidence that the employer's proffered explanation is unworthy of credence, and that the true reason for the employer's action was unlawful discrimination. See id.

On Target has not met its burden of proving that there is no genuine issue of material fact with respect to this claim. Plaintiffs are members of the protected class because they allege that On Target retaliated against them on account of their complaints about On Target's failure to fulfill Cater's representation that it would provide better health benefits for those employees in plaintiffs' position within six months. Because Cater's representation may be enforceable as a breach of fiduciary duty under the terms of ERISA, plaintiffs have standing to sue under 29 U.S.C. § 1140. See 29 U.S.C. § 1140 ("It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of . . . this subchapter, . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under . . . this subchapter. . . . ."); Stiltner v. Beretta U.S.A. Corp., 74 F.3d 1473, 1482 (4th

Cir. 1996) ("This section prohibits two types of discrimination by an employer. First, an employer may not discriminate against an employee with the purpose of interfering with an employee's exercise of certain rights. Second, an employer may not discriminate against an employee with the purpose of interfering with an employee's attainment of certain rights."). Plaintiffs' offer of proof is sufficient to raise a material issue of fact regarding On Target's true reason for demoting plaintiffs. On Target's proffered reasons for demoting Clouston and McGuigan, performance issues and, in addition with respect to Clouston, failure to move to Connecticut, are subject to dispute. The facts that Clouston and McGuigan were the only two supervisors to complain about the poor health benefits, their demotions were during the same month that McGuigan wrote to the U.S. Department of Labor, and the circumstances surrounding On Target's reaction to McGuigan's letter could lead a reasonable trier of fact to conclude that retaliation, and not the stated reasons, was On Target's motive for demoting plaintiffs. Summary judgment is therefore denied as to this claim.

### G. WORKERS' COMPENSATION RETALIATION

McGuigan claims that On Target violated Section 31-290a of the Connecticut General Statutes by demoting him in retaliation for exercising his rights under the Connecticut Workers' Compensation Act. Section 31-290a provides that "[n]o employer

-20-

who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter." Conn. Gen. Stat. § 31-290a(a). McGuigan claims that On Target did not observe McGuigan's physician's restrictions for his return to light duty and then demoted McGuigan in retaliation for voicing his objections to Buettel.

On Target has not met its burden of demonstrating no material issue of fact for trial on this claim. As with the previous claim, the court applies the <u>McDonnell Douglas Corp. v. Green</u> burden-shifting analysis, which is set forth in the preceding section. <u>See</u> <u>Ford v. Blue Cross and Blue Shield ofFord v. Blue Cross and Blue Shield of Connecticut, Inc.</u>, 216 Conn. 40, 53-54 (1990). McGuigan does not allege that the initial claim for benefits was the protected activity; instead, he claims that On Target demoted him for objecting to On Target's failure to provide light duty commensurate with his physician's restrictions, which is a right protected by the Connecticut Workers' Compensation Act. <u>See</u> Conn. Gen. Stat. § 31-313(a)(1) ("Where an employee has suffered a compensable injury which disables him from performing his customary or most recent work, his employer at the time of such injury shall transfer him to

full-time work suitable to his physical condition where such work
is available, during the time that the employee is subjected to
medical treatment or rehabilitation or both and until such
treatment is discontinued on the advice of the physician
conducting the same or of the therapist in charge of the
rehabilitation program or until the employee has reached the
maximum level of rehabilitation for such worker in the judgment
of the commissioner under all of the circumstances, whichever
period is the longest.").[4]  McGuigan has also presented
sufficient evidence for the trier of fact to conclude that On
Target demoted him for exercising his rights under the Workers'
Compensation Act and not on account of his allegedly poor
performance because his poor performance can be disputed, there
was some discussion at McGuigan's demotion regarding his
complaints about not being able to attend physical therapy and
Moore's failure to observe the McGuigan's light duty
restrictions, and McGuigan's discussion with Buettel occurred
shortly before McGuigan's demotion.  Therefore, defendants'
motion for summary judgment is denied with respect to this claim.

H. RETALIATION FOR EXERCISING FREE SPEECH RIGHTS

Plaintiffs contend that On Target retaliated against them in

---

[4] Although the ability to compel the employer to provide
light duty rests with the Workers' Compensation Commission, see
Conn. Gen. Stat. § 31-313(a)(2), McGuigan can bring this claim
because he is not alleging a failure to provide light duty but
rather a demotion in retaliation for asserting this right.

violation of Section 31-51q of the Connecticut General Statutes[5]
because On Target demoted them in order to punish them for
speaking about a matter of public concern. "Section 31-51q
protects from retaliatory discharge an employee who invokes
constitutionally guaranteed free speech rights that, in turn,
protect statements that address a matter of public concern."
Daley v. Aetna Life and Cas. Co., 249 Conn. 766, 776 (1999). In
determining what speech is protected, the Connecticut Supreme
Court has looked to federal cases challenging government action
against employees, which apply the following standard:

> when a public employee speaks not as a citizen upon
> matters of public concern, but instead as an employee
> upon matters only of personal interest, absent the most
> unusual circumstances, a federal court is not the
> appropriate forum in which to review the wisdom of a
> personnel decision taken by a public agency allegedly
> in reaction to the employee's behavior.

---

[5] This statute provides, in pertinent part, the following:

> Any employer, including the state and any
> instrumentality or political subdivision thereof, who
> subjects any employee to discipline or discharge on
> account of the exercise by such employee of rights
> guaranteed by the first amendment to the United States
> Constitution or section 3, 4 or 14 of article first of
> the Constitution of the state, provided such activity
> does not substantially or materially interfere with the
> employee's bona fide job performance or the working
> relationship between the employee and the employer,
> shall be liable to such employee for damages caused by
> such discipline or discharge, including punitive
> damages, and for reasonable attorney's fees as part of
> the costs of any such action for damages.

Conn. Gen. Stat. § 31-51q.

Connick v. Myers, 461 U.S. 138, 147 (1983).  In general, "speech
on 'any matter of political, social, or other concern to the
community' is protected by the First Amendment."  Morris v.
Lindau, 196 F.3d 102, 110 (2d Cir. 1999) (quoting Connick, 461
U.S. at 146).

     Plaintiffs' claim fails as a matter of law because they do
not allege that the speech in retaliation for which they were
allegedly demoted is protected by the First Amendment to the
United States Constitution or Sections 3, 4 or 14 of the
Connecticut Constitution.  Plaintiffs' speech addressed Moore's
vulgarity and threatening behavior, and Moore's directions to add
hours to certain employee's time sheets.[6]  Despite plaintiffs'
efforts to aggrandize these matters, plaintiffs' speech could not
be construed to concern anything other than workplace personnel
matters.  As such, it is not protected by the U.S. Constitution
or the Connecticut Constitution.  Therefore, defendants' motion
for summary judgment is granted with respect to this claim.

### III. CONCLUSION

     For the foregoing reasons, defendants' motions for summary
judgment on the claims brought by both Clouston (dkt. # 62) and
McGuigan (dkt. # 66) are **GRANTED in part** and **DENIED in part**.
Judgment for the defendants shall enter on Counts One; Two;

---

     [6] Plaintiffs' speech regarding their health benefits relates
to ERISA and therefore cannot be the basis for their Section 31-
51q claim.

-24-

Three; Four; Five, inasmuch as plaintiffs assert a claim for benefits under 29 U.S.C. § 1132(a)(1)(B); and Seven.  Defendants' motions are denied with respect to the remainder of Count Five pertaining to both Clouston and McGuigan, and Count Six pertaining to McGuigan.  The parties shall file a joint trial memorandum in accordance with this court's standing order on or before **October 7, 2005.**

So ordered this 19th day of August, 2005.

**/s/DJS**

_____
   **DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**