UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CHRISTOPHER CLOUSTON,<br>MARSHALL McGUIGAN | : | |
| Plaintiffs | : | CIVIL ACTION NO.:<br>01-CV-2404 (DJS) |
| vs. | : | |
| ON TARGET LOCATING SERVICES,<br>ENERGY EAST CORP. and THE<br>UNION WATER & POWER COMPANY | :<br><br>: | <br><br>SEPTEMBER      , 2005 |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR RECONSIDERATION**

Plaintiffs, Marshall McGuigan and Christopher Clouston, respectfully submit this memorandum of law in support of their Motion for Reconsideration as to the Court's Order granting Defendant's Motion for Summary Judgment as to Count Four (Promissory Estoppel). Plaintiff McGuigan further seeks reconsideration with regard to the Court's order granting summary judgment as to Counts One (Breach of Contract), Two (Negligent Misrepresentation) and Three (Breach of the Implied Covenant of Good Faith and Fair Dealing). For the reasons set forth below, Plaintiffs urge the Court to reconsider its decision in light of prevailing law, and the evidence submitted.

**PROMISSORY ESTOPPEL (Count Four)**

There have been a number of Appellate Court decisions addressing promissory estoppel in the employment context since the Defendant's Motion for Summary

Judgment was filed on March 26, 2003, including <u>Stewart v. Cendant Mobility Servs. Corp.</u>, 267 Conn. 96, 837 A.2d 736 (2003); <u>Cweklinsky v. Mobil Chem. Co.</u>, 364 F.3d 68 (2004); and <u>Holt v. Home Depot USA, Inc.</u>, 2004 U.S. Dist. LEXIS 824 (D. Conn., Jan 22, 2004) (RNC), affirmed, 2005 U.S. App. LEXIS 5706 (decided April 6, 2005).  These cases make clear that even an at-will employee may pursue a claim of promissory estoppel, particularly where an employee alleges that he was retaliated against for utilizing an internal complaint procedure to voice concerns about his supervisors in accordance with a written policy or procedure that includes a guarantee of no retaliation. This is, of course, exactly what happened to Plaintiffs.  Plaintiffs urge that the fact that the Court concluded that Defendant's written statements and promises did not reach the level of an implied contract should not bar their promissory estoppel claims.   Plaintiffs therefore seek reconsideration of the Court's finding that:

> For the reasons set forth in the preceding section of this memorandum, plaintiffs cannot, as a matter of law, prevail on their promissory estoppel claim.  The acknowledgement and disclaimer, and the lack of clear and definite representations that could be considered promissory, precludes recovery in this case.

(Memorandum of Decision at 15-16).

In this case, as the Court correctly found, McGuigan and Clouston were both demoted shortly after they voiced their concerns about suspected misconduct and violations of company policies to Rena Cater, Defendant's Human Resources Coordinator who was conducting training on the Defendant's Code of Conduct.  That training emphasized the requirement that employees come forward with any suspected

violations under the promise that they would not be retaliated against as a result. "At some point after their promotions to supervisor, on or about January 28 or 29, 2001, McGuigan and Clouston raised concerns about Moore's behavior with Cater following a training session regarding On-Target's Code of Conduct". (Memorandum of Decision at 2-3). Plaintiffs urge that these facts, as found by the Court, put the instant action on all fours with Holt, Stewart and Cweklinsky. Plaintiffs urge that they have presented more than sufficient evidence for a reasonable juror to find that Defendants made a clear and definite promise that employees who reported suspected violations of defendants policies, including the Code of Conduct, as employees were expressly required to do, would not suffer any retaliation or reprisal; and that Defendant violated that promise by in fact demoting and otherwise retaliating against McGuigan and Clouston as a result of expressing their concerns.

When viewed in a light most favorable to Plaintiffs, a juror could reasonably find that Defendants did in fact impose an affirmative duty on Plaintiffs to report suspected violations of the Code of Conduct, with a clear and definite promise that their claims would be investigated in good faith and no retaliation or other adverse reaction would result from bringing their complaints forward. For example, as set forth by both Plaintiffs in their responses to defendant's Rule 56(a)(1) Statements (Clouston at Par. 22, McGuigan at Par. 25):

> The code of conduct, which contains no disclaimer, does contain
> promissory contractual language and does bestow contractual rights. (Ex.
> A-4) The Code of Conduct, which includes a introduction from Wesley W.

> von Schack, Energy East's Chairman, President and CEO, "applies to every employee" (p.1) tells each such employee "If you suspect or have knowledge of a violation of law or regulation or the Code of Conduct you have an obligation to report it to your supervisor" and further states, in bold print: "**Energy East will not tolerate any form of reprisal or retaliation against any employee reporting actual or suspected violations of laws or regulations or the Code of Conduct.**" (p.5). Employees are also assured "No adverse action will be taken against any employee as a result of a good faith report of a violation." (p.5-6).
>
> The Code of Conduct also expressly required McGuigan to report his concerns about being ordered to prepare inaccurate time sheets:
>
> All information must be recorded and reported honestly, completely and accurately. The integrity of Energy East's financial reporting process is vital. Reliance on our financial information by shareholders, regulators lending institutions and others requires a commitment from each employee to comply with Energy East standards of financial reporting. Each employee records or reports information in the course of their work. For example, you complete expense reports, **time sheets**. . .No employee should rationalize or even consider misrepresenting facts or falsifying records. It will not be tolerated and will result in disciplinary action. (p.31-32) (emphasis added).

A jury could further reasonably find that rather than conduct a full, fair and impartial investigation into Plaintiffs' allegations, Defendants instead retaliated against and demoted Plaintiffs, thereby breaching their promise.

The Holt case, in which the Second Circuit Court of Appeals affirmed a lower court decision upholding a jury verdict which found that plaintiff had been retaliated against for voicing his concerns to company management pursuant to Home Depot's Open-Door policy, is almost directly on point. In the instant case, as the Court correctly found, both McGuigan and Clouston were both demoted after voicing concerns to Rena Cater. The circumstances surrounding Plaintiff's demotions are more than sufficient to

support an inference of retaliation. Indeed, Plaintiffs' claims are arguable stronger than was the case in <u>Holt</u>, as the Code of Conduct admittedly contained no language attempting to disclaim contractual reliance. In <u>Holt</u>, on the other hand, the Court upheld the promissory estoppel claim based on promissory language in an employee handbook despite the fact that the Court expressly found that the handbook itself contained an effective disclaimer. In doing so, Judge Chatigny rejected Home Depot's argument that the presence of disclaimers in various documents precluded such a claim by making plaintiff's reliance unreasonable:

> Home Depot argues that it made no definite promise on which plaintiff could reasonably rely. While conceding that its employee handbook contained an explicit promise that no employee would be penalized for using the open-door procedure, it contends that plaintiff could not reasonably rely on the promise because of disclaimers of contractual intent contained in the handbook and his employment application. I disagree.

<u>Holt v. Home Depot, U.S.A., Inc.</u>, 2004 U.S. Dist. LEXIS 824 (D.Conn., Jan. 22, 2004)(RNC), affirmed, 2005 U.S.App. LEXIS 5706 (April 6, 2005). The Second Circuit affirmed, holding, "We further find that there was sufficient evidence at trial to allow the jury to conclude that plaintiff-appellee was retaliated against as a result of his use of the open door policy. We reach this conclusion both for those reasons stated by the district court and further because the jury could reasonably have inferred that Holt's supervisor retaliated against him for his stated *intention* to complaint about her." 2005 U.S.App. LEXIS 5706 (April 6, 2005).

The record makes clear that Defendant's Code of Conduct imposes an affirmative duty on employees to report suspected misconduct or other violations of the Code of Conduct. The Code of Conduct makes a very clear and definite promise that employees will not be retaliated against for bringing suspected violations to the attention of company management. Plaintiffs urge that the Code of Conduct, which contains no "Disclaimer" or other attempt to limits its applicability to Plaintiffs, contained clear and definite promises which Plaintiffs were more than justified in relying on. This is especially so given that they were expressly told by Rena Cater during a training session that they were obligated to report any concerns and that they would not suffer any retaliatory response as a result of voicing their concerns. Indeed, McGuigan and Clouston approached Cater during a break in the training to confirm that they had an obligation to report their concerns, in accordance with the directions of the Code of Conduct.

Promissory statements regarding the duty to report suspected misconduct were included in various documents published by On Target, Union Water and Power, Central Maine Power and Energy East. In addition to these publications, these promissory statements were repeated orally, including in the course of company sponsored training sessions. (See, e.g., Plaintiff's Summary Judgment Exhibits 24, 27.) In this case, Energy East's Code of Conduct admittedly does not contain a "disclaimer". Nor does Central Main Powers' "Principles of Business Conduct" (Plaintiffs' Summary Judgment Exhibit 19) which states in bold type that "**CMP Group will not tolerate any**

**form of reprisal or retaliation against any employee reporting actual or suspected violations of law or the Principles of Business Conduct.**" (Ex. 19 at 2.)  Indeed, the Energy East Code of Conduct, which went into effect in February 2001, was the subject of Rena Cater's training session at the end of January, 2001, in response to which Plaintiff's addressed their concerns to Rena Cater.  The fact that the code of conduct was in writing and signed by the President and Chief Executive Officer of Energy East, Wesley W. von Schack ("Wes") supercedes any prior attempts to disclaim reliance. (Defendant's Ex. A-4 at 1).  The Code of Conduct expressly applies to all employees and advises supervisors to "ask for guidance before acting" which Clouston and McGuigan did when they approached Rena Cater.  This Code of Conduct encourages employees to "report questionable events to their supervisors" and promises that "No individual may fire or discriminate against an employee for reporting in good faith suspected violations of this code in accordance with its procedures."  Similar promissory statements are contained within the various Employee Handbooks published during Plaintiffs' tenures.  Indeed, the Employee Handbook presented by Defendants as Exhibit 3 of its Supplemental Appendix to Motions for Summary Judgment, which Defendant apparently claims applies to both Plaintiffs, contains a section on "Our Standards of Conduct" (P01398-P01402), which encourages employees to "report questionable events to their supervisors" and promises that "No individual may fire or discriminate against an employee for reporting in good faith suspected violations of this

code in accordance with its procedures." (Defendant's Supplemental Exhibit 3 at P01399). [1]

## BREACH OF CONTRACT (COUNT ONE), NEGLIGENT MISREPRESENTATION (COUNT TWO), IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT THREE) (AS TO PLAINTIFF MCGUIGAN ONLY)

Plaintiff Marshall McGuigan respectfully moves for reconsideration of the Court's order granting Summary Judgment as to Counts One (Breach of Contract), Two (Negligent Misrepresentation) and Three (Implied Covenant of Good Faith and Fair Dealing). Specifically, McGuigan asks the Court to reconsider its finding that

> McGuigan claims that the Union Water Power Company Employee Handbook upon which On Target relies did not contain the language quoted in the text of this memorandum at the time he was hired. McGuigan's evidence in this regard, however, is not authenticated, as Judge Smith noted in his ruling on Defendants' Motion to Strike (See, Dkt #93 at 5), and therefore cannot be considered. As such, On Target has offered uncontradicted evidence that the portion of the Union Water Power Company Employee Handbook quoted in the text was part of the operative version when plaintiffs were hired.

Memorandum of Decision at fn. 2. As set forth below, McGuigan respectfully requests that the Court reconsider its decision granting summary judgment as to Counts One, Two and Three in light of the fact that the Employee Handbook given to McGuigan upon hire did not contain the language cited by the Court, nor any other "Preface", "Disclaimer" or other

---

[1] As set forth below, this Handbook, which was admittedly presented to Clouston and contains a "Preface" which the Court found was an effective disclaimer, was never presented to McGuigan and does not apply to him.

attempt to disclaim contract, and Plaintiff only recently became aware of the full scope of Judge Smith's decision. (See Affidavits attached hereto as Exhibits 2 and 3.)

Exhibit 1 attached hereto is a copy of the Handbook given to Marshall McGuigan upon hire, a portion of which was previously produced as Exhibit 15 to Plaintiff's Opposition to Summary Judgment. The handbook given to Marshall McGuigan does not contain the "Preface" which was contained in the handbook given to Christopher Clouston some months after McGuigan was hired (Ex. 3 to Def. Supplement Appendix). While the two documents are substantially similar, the handbooks have different covers and, most notably, McGuigan's contains no "Preface" or other attempt to disclaim contractual reliance.

McGuigan reasonably relied on the provisions of the Employee Handbook, Code of Conduct and other documents which he was told applied to him and which he needed to apply when supervising others. As set forth in McGuigan's original memorandum, even if On Target subsequently added a disclaimer, this would not apply to McGuigan and other employees hired previously. See, Torosyan v. Boehringer-Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 11, 13-14, 17, 19-20 (1995) and its progeny. Plaintiff urges that the applicant's statement signed by McGuigan is insufficient to void the contractual and promissory statements subsequently made by Defendant. This is especially so since McGuigan was told that the application was a mere formality. (Ex. 6, McGuigan Depo. at 16.) Moreover, the applicant's statement expressly states that the purported "at will" employment relationship could be changed by written documents acknowledged in writing

by an authorized representative of the company, such as the Employee Handbook (Ex. 1 attached hereto) and the Code of Conduct signed by Energy East's CEO (Def. Ex. A-4).. (Memorandum of Decision at 9, citing Dkt. #65, Ex. A, Exs. 1 + 2).

Plaintiff therefore requests that the Court reconsider its ruling as to Counts One, Two and Three, in light of the fact that McGuigan's handbook contained no disclaimer. For the reasons set forth in the Memorandum of Law and other documents submitted by McGuigan in Opposition to Defendant's Motion for Summary Judgment, Plaintiff urges that there remains at least a genuine issue of material act with regard to his claims of Breach of Contract (Count One), Negligent Misrepresentation (Count Two) and Breach of the Implied Covenant of Good Faith and Fair Dealing (Count Three).

        THE PLAINTIFF

BY_____
    Francis D. Burke
    Mangines & Burke, LLC
    1115 Main Street, Suite 708
    Bridgeport, CT  06604
    (203) 336-0887
    Fed. Bar No. ct18688

## **CERTIFICATION**

      This is to certify that a copy of the foregoing has been sent, via U.S. Mail postage prepaid, this _____ day of September 2005, to:

Patricia E. Reilly, Esq.
Christopher A. Kelland, Esq.
Tyler, Cooper & Alcorn, LLP
205 Church Street
P.O. Box 1936
New Haven, CT  06510-1910

                                                    _____
                                                      Francis D. Burke